FANNIE MORRIS, *Plaintiff Below, Defendant in Error,*

*v.*

THE CITY OF WHEELING, *a Municipal Corporation,* and LOUIS YAHN and WILLIAM YAHN, *Doing Business as* YAHN BROTHERS PURE OIL SERVICE, *Defendants Below,*

THE CITY OF WHEELING, *a Municipal Corporation, Plaintiff in Error,*

(No. 10605)

and

FANNIE MORRIS, *Plaintiff Below, Plaintiff in Error,*

*v.*

THE CITY OF WHEELING, *a Municipal Corporation,* and LOUIS YAHN and WILLIAM YAHN, *Doing Business as* YAHN BROTHERS PURE OIL SERVICE, *Defendants Below.*

(No. 10636)

Submitted April 27, 1954. Decided June 15, 1954.

*George G. Bailey, Charles P. Mead,* for plaintiff in error, City of Wheeling.

*Thomas P. O'Brien, W. F. Keefer,* for plaintiff in error, Fannie Morris.

*O'Brien* and *O'Brien,* for defendants in error, Louis Yahn and William Yahn, d/b/a Yahn Bros. Pure Oil Service.

RILEY, JUDGE:

Fannie Morris instituted in the Circuit Court of Ohio County this action of trespass on the case against The City of Wheeling, a municipal corporation, and Louis Yahn and William Yahn, doing business as Yahn Brothers Pure Oil Service, to recover damages for personal injuries alleged to have been incurred by the plaintiff by reason of the sidewalk of a public street of The City of Wheeling, that is Sixteenth Street, upon which property leased by the individual defendants abuts, being out of repair within the meaning of Section 17, Article 10, Chapter 40, Acts of

the Legislature, First Extraordinary Session, 1933 (Michie's West Virginia Code, Anno., 1949, Chapter 17, Article 10, Section 17), and against the individual defendants, Louis Yahn and William Yahn, doing business as Yahn Brothers Pure Oil Service, alleged to have been incurred by reason of the defendants' negligence in failing to remove snow and ice from the sidewalk on Sixteenth Street abutting the property leased by the individual defendants in violation of "An Ordinance of the council of the city of Wheeling, amending and reenacting sections 3 and 4 of article 1 of chapter 31 of the Code of the city of Wheeling, 1949." To a judgment in plaintiff's favor and against the defendant, The City of Wheeling, a municipal corporation, in the amount of two thousand dollars, and of *nil capiat per breve* in favor of the defendants, Louis Yahn and William Yahn, doing business as Yahn Brothers Pure Oil Service, and against the plaintiff, Fannie Morris, the defendant, The City of Wheeling, and the plaintiff, Fannie Morris, prosecute separate writs of error to this Court.

For purposes of convenience The City of Wheeling will be hereinafter referred to as "city of Wheeling", and the defendants, Louis and William Yahn, will be referred to as "Yahn Brothers".

The pertinent parts of the ordinance of the city of Wheeling, heretofore referred to, upon which plaintiff seeks to assert liability against Yahn Brothers, which was introduced in evidence and is entitled "An Ordinance of the council of the city of Wheeling amending and reenacting sections 3 and 4 of article 1 of chapter 31 of the Code of the City of Wheeling 1949", read:

"Section 3. Removal of snow from sidewalks

"The owner or occupant, or any person having the care of any building or lot of land bordering on any street or square within the city, where there is a sidewalk graded, or graded and paved, shall, within a reasonable time following any snow fall, cause the same to be removed therefrom. The provisions of this section shall apply to the falling of snow or ice from any building. The provisions relating to computation of time, as set forth in

section 6 of chapter 1 of this Code, shall not apply to section 3 as to the removal of snow from sidewalks.

"Section 4. Removal of ice from sidewalks; sanding

"Whenever the sidewalk or part thereof adjoining any building or lot of land on any street shall be encumbered with ice, it shall be the duty of the owner or occupant, or any person having the care of such building or lot, to cause such sidewalk to be made safe and convenient by removing the ice therefrom or by covering the same with sand or some other suitable substance within a reasonable time after said ice accumulates on such sidewalk or part thereof.

"The provisions relating to computation of time, as set forth in section 6 of chapter 1 of this Code, shall not apply to section 4 as to the removal of ice from sidewalks or to the sanding of icy sidewalks."

The plaintiff, Fannie Morris, slipped and fell on the sidewalk in front of the gas filling station located on the north side of Sixteenth Street between Chapline and Market Streets in the city of Wheeling, operated by the defendants, Yahn Brothers, doing business as Yahn Brothers Pure Oil Service, about eight-thirty on the night of December 17, 1951. The plaintiff was painfully and seriously injured by slipping on ice which had accumulated on the sidewalk of Sixteenth Street, in the city of Wheeling, adjacent to the property occupied under lease by the defendants, Yahn Brothers. At the time plaintiff was injured she was travelling on foot from the place of her employment in a part of Wheeling known as "East Wheeling" from east to west on the north side of Sixteenth Street in the city of Wheeling, for the purpose of boarding a bus, which would carry her to her home in the vicinity of Boggs Run in Marshall County, in or near the city of Benwood. At the place where plaintiff slipped and fell the sidewalk sloped sharply from the property line of the premises leased by the defendants, Yahn Brothers, to Sixteenth Street proper in a southerly direction. From the

property line of the street proper the slope of the sidewalk was somewhat over one foot in ten, while other sidewalks over which plaintiff travelled sloped in a lesser degree, that is, at least in some instances, three inches in ten feet. The sidewalk had a smooth surface of concrete, and was constructed so as to give ready access for automobiles into the gasoline station.

The property leased by Yahn Brothers consists of an automobile service station located on a tract of land measuring approximately 65 x 67 feet, exclusive of the sidewalks, and occupying a part of the corner lot, situated on the northwest corner of Chapline and Sixteenth Streets in the city of Wheeling, directly across Chapline Street from the City-County Building. The frontage of the property on Chapline Street along the curb was approximately seventy-five feet, and on Sixteenth Street along the curb the frontage was approximately eighty-one feet, so that the property was substantially rectangular in shape. The buildings, constituting the automobile service station, occupy about one-third to one-fourth of the area, and are located at the northwest corner of the lot, and along the adjacent northerly and westerly sides of the property. Except perhaps inside the building there was no sewer opening, catch basin, or other drain upon any part of the lot occupied and leased by Yahn Brothers, so that water caused by rain or melting snow, falling or accumulating on the lot could not escape except by flowing over the sidewalks; and there is probative evidence to the effect that water accumulating on the service station lot would flow across the sidewalk adjacent to the filling station property on the south side and the southwest corner thereof. Snow and rain had been falling intermittently on December fourteenth, and, on the entire day of December fifteenth, the temperature was below freezing, the Fahrenheit reading on the thermometer at midnight on that day being 4° below zero. On December fifteenth there were two inches of snow on the ground, and some snow fell on that day. On the following day, December sixteenth, the temperature rose from 3° below

zero at eight o'clock in the morning to 20° above zero at midnight, and throughout this period the snow remained on the ground. On December seventeenth, the day on which plaintiff was injured, the temperature was 1° below zero at eight o'clock in the morning, and 25° above zero at midnight. So continuously from and including December fourteenth, until and after the time plaintiff was injured on December seventeenth, the temperature consistently remained below the freezing point, and from December fifteenth to December seventeenth, inclusive, the temperature at times was below zero. Because of the freezing temperatures, snow and rain which fell on December fourteenth resulted in all of the streets and sidewalks of the city of Wheeling being covered with ice and frozen snow from December fourteenth to December seventeenth. This general condition of the streets and sidewalks in the city of Wheeling prevailed at the time plaintiff left her home in Boggs Run, Marshall County, on the morning of December seventeenth on her way to work, and when she boarded a bus from Boggs Run to the main business section, where she changed busses and proceeded by another bus to the plant of Wheeling Mold & Foundry Company in East Wheeling. So this record discloses that the streets and sidewalks over which plaintiff travelled, while walking from her home to the bus and between busses and from the bus to her place of employment, were covered with ice and snow.

Each of the Yahn Brothers testified that they had removed the snow from the sidewalks adjacent to their filling station before December 17, 1951, the day plaintiff was injured; and that they had removed some of the ice from the sidewalks, but, because the temperature was below zero during a portion of the day on which plaintiff was injured and on the two days proceeding that, they had not been able to completely remove all of the ice. From the record it appears that the frozen ice had not been removed from other sidewalks adjacent to and near the service station, and that in order to make the sidewalks safe for pedestrian travel Yahn Brothers testified they

had applied rock salt to the sidewalks, and specifically to that portion where plaintiff fell, on the morning and the afternoon of that day.

In the petition of the city of Wheeling, upon which this Court awarded a writ of error to the city of Wheeling, it is asserted that "the ice on the sidewalk where the plaintiff fell was regular as to form and there is no testimony indicating that the ice where the plaintiff fell was in any different condition than the ice over all other sidewalks of the city at the time of the accident."

The defendant, city of Wheeling, contends that the sidewalk on Sixteenth Street at the place where plaintiff fell was in the same condition as other sidewalks in the city of Wheeling, over which she had travelled on her way from her home to work and on her return before she reached the place where she slipped and fell. The trial court, however, in its memorandum on the defendants' motion for a new trial stated that "The slope of the sidewalk from the property line [of the Yahn property] was over one foot in ten, while other sidewalks, especially that nearby, sloped about three inches in ten feet."

In an endeavor to establish that the conditions on the sidewalk at the place where plaintiff slipped and fell were different from those at other points on the sidewalks in the vicinity of Yahn Brothers service station, the plaintiff introduced the testimony of James Schellhase, a civil and mining engineer and surveyor, who made a detailed level and topographical survey of Yahn Brothers' property, Sixteenth Street, and Chapline Street abutting the Yahn Brothers' property and the sidewalks thereof along the Yahn Brothers' property, and a map designated as "Plaintiff's Exhibit No. 2", showing the result of such survey, was introduced in evidence. From Schellhase's testimony and Exhibit No. 2, it appears that directly to the west of Yahn Brothers' property on Sixteenth Street there is a barber shop, adjoining which on the west is a church designated on the map as the "English Lutheran Church 1897", and that a part of the sidewalk on Sixteenth Street,

upon which the barber shop and church abut, has a curb running between the sidewalk and street proper of Sixteenth Street, but there is no curb on the sidewalk south on Sixteenth Street and east on Chapline Street, where those streets abut the Yahn Brothers' property, except there is a short curb which runs around the corner of Sixteenth Street and Chapline Streets, and a short distance in a northerly direction along Chapline Street. At the southeast corner of the Yahn Brothers' property there is a white area designated on the Schellhase map, which represents a raised concrete block, upon which is erected the sign of the Pure Oil Company, evidently designating the kind of gasoline and oil products sold by Yahn Brothers, the elevation of which concrete block for the purpose of determining the elevations at other points of the streets and sidewalks and of the service station of Yahn Brothers was arbitrarily fixed by Schellhase at 100.00.

Using this arbitrary elevation as a basis and testifying from the map prepared by the witness and introduced in evidence as "Plaintiff's Exhibit No. 2", which map shows that the topography and levels of the northwest corner of Sixteenth Street and Chapline Street in the city of Wheeling, upon which the service station of Yahn Brothers is situated, Schellhase testified in detail to the effect that the platform of the service station and the concrete sidewalk on Sixteenth Street slant generally in a southwesterly direction from the service station buildings to Sixteenth Street proper.

Schellhase drew lines on the plat across the part indicated by the concrete platform of the service station and the Sixteenth Street sidewalk, which would indicate how the water would flow in concentrated bulk. Beginning at a point designated by the number "5" in a circle near the northeasterly property line of the Yahn property, and running in a southwesterly direction, Schellhase testified that the levels are, respectively: 100.00; 99.39; 98.99; 98.00; 97.19; 96.48; and 96.29, the last two levels being, respectively, on the line between the Sixteenth Street sidewalk and

the center of the sidewalk; and a line drawn by Schellhase, indicating the flow of water from the same point designated on the plat as number "5" in a circle, and running in a generally southerly direction, a short distance to the east of the last-mentioned line and across the sidewalk, the elevations are, respectively: 100.00; 97.87; 98.41; at the southerly property line of the Yahn property; and in addition the witness drew on the plat other lines running between the two lines just mentioned and into the first mentioned line, where he testified the water would flow from higher to lower levels on the concrete platform.

Notwithstanding the detailed evidence contained in this record, which clearly shows that water would flow, and the manner in which it would flow, from the higher levels of the platform of the service station across the platform itself and the concrete sidewalk on Sixteenth Street, the record does not contain any probative evidence to the effect that such water, because of the topography of the service station and the concrete sidewalk on Six-teenth Street may have been caused to flow in bulk, became frozen so as to create ridges of ice across the sidewalk at the point where plaintiff slipped and fell, as was portrayed by the facts in the case of *Boyland* v. *City of Parkersburg*, 78 W. Va. 749, 90 S. E. 347, in which this Court, in reversing the judgment of the trial court in plaintiff's favor because of error in the instructions, held that the public sidewalk in the city of Parkersburg alleged to have been out of repair was in such condition that the jury could find that it was, in fact, out of repair within the meaning of the statute and said: "There is some evidence tending to show that this ice was formed from water which came from the down spout of the Arendt building, spreading over the sidewalk along the vacant lot, mingling with the water from the melting snow"; and within the scope of the allegations of the declaration in the case of *Rich* v. *Rosen-shine*, 131 W. Va. 30, 45 S. E. 2d 499, in which this Court held that the declaration was sufficient to base liability against both the property owner under an ordinance of the city of Fairmont and the city of Fairmont under the

statute, which allegations were to the effect that snow was piled in ridges and depressions and ice was formed upon the sidewalk, so that the accumulation of ice and snow upon the sidewalk was slippery, unsafe and dangerous to persons travelling upon it.

Though the defendants, city of Wheeling and Yahn Brothers, are joined in this action on the basis that plaintiff was injured by reason of a single alleged hazardous condition of the sidewalk on Sixteenth Street adjoining the Yahn Brothers' property, the liability of the city of Wheeling, if any, is entirely distinct from that of the individual defendants. Notwithstanding the liability of the defendants is alleged to be joint, this case involves two distinct norms of liability: (1) The liability of a municipal corporation under Section 17, Article 10, Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933, for alleged injuries caused by one of its sidewalks being out of repair, which liability is absolute, and is not based upon the negligence of the municipality, *(Roth* v. *City of Moundsville,* 118 W. Va. 283, 190 S. E. 332; *Thompson* v. *City of Charleston,* 118 W. Va. 391, 191 S. E. 547); and (2) the alleged liability of Yahn Brothers for injuries alleged to have been proximately caused by their negligence in failing to remove snow and ice from the sidewalk on Sixteenth Street in the city of Wheeling adjoining their property, in violation of an ordinance of the city of Wheeling, amending and reenacting Sections 3 and 4 of Article 1, Chapter 31 of the Code of The City of Wheeling, 1949, which alleged violation of the ordinance of the city of Wheeling to be actionable *prima facie* negligence must be the proximate cause of plaintiff's injury. *Moore, Admr.* v. *Skyline Cab, Inc.,* 134 W. Va. 121, 59 S. E. 2d 437, pt. 1 syl., in which this Court held: "The violation of an ordinance is not negligence as a matter of law, but is *prima facie* actionable negligence when it is the proximate cause of an injury." See also *Oldfield* v. *Woodall,* 113 W. Va. 35, 166 S. E. 691; *Meyn* v. *Dulaney-Miller Auto Co.,* 118 W. Va. 545, 191 S. E. 558; *Skaff* v. *Dodd,* 130 W. Va. 540, 44 S. E.

2d 621; *Rich* v. *Rosenshine, supra;* and *Somerville* v. *Dellosa,* 133 W. Va. 435, 56 S. E. 2d 756.

Though plaintiff's alleged injuries were incurred as the result of the condition of the sidewalk on Sixteenth Street at the place where plaintiff is alleged to have slipped and fallen, and the verdict of the jury resulted in a judgment in plaintiff's favor against the city of Wheeling and in favor of Yahn Brothers, the verdict is not inconsistent because of the separate and distinct rules governing the absolute and nonassignable duty of a municipal corporation, under Section 17, Article 10, Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933 (Michie's West Virginia Code, 1949, Anno., Chapter 17, Article 10, Section 17), to maintain its streets, sidewalks and alleys so that they do not become "out of repair"; and the liability of an abutting property owner, which is contingent upon: (1) The violation of a municipal ordinance which requires the property owner to remove snow and ice from the sidewalks abutting the property owner's premises; and (2) the requirement that there be sufficient evidence from which the jury could find from a preponderance thereof that the violation of the ordinance was the proximate cause of the alleged injury.

Though this Court has held that it is the duty of a municipal corporation to maintain its streets, sidewalks and alleys so that they do not become "out of repair" and has construed the words "out of repair", as used in the statute, as including "obstructions to the highway as well as defects therein, without regard to the manner in which or the person by whom such obstructions were placed there.", Pt. 2 syl., *Boyland* v. *City of Parkersburg, supra,* it has been the uniform holding of this Court that the absolute duty imposed by statute upon a municipal corporation does not render the municipal corporation an insurer against injuries incurred by those using its streets, sidewalks and alleys, and that every defect therein, though it may cause injury upon which an action is based, is not actionable. This Court held in pt. 4 syl., *Yeager* v. *City of Bluefield,* 40 W. Va. 484, 21 S. E. 752, 2 L. R. A.

N. S. 160N, and 20 L. R. A. N. S. 577N, that: "A municipal corporation is not an insurer against accidents upon streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient if the streets are in a reasonably safe condition for travel in the ordinary modes, with ordinary care, by day or night; and whether so or not is a practical question to be determined in each case by its particular circumstances." Thus in *Burdick* v. *City of Huntington*, 133 W. Va. 724, 728, 57 S. E. 2d 885, 888, this Court in construing the applicable statute, now Section 17, Article 10, Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933, (Michie's Code, 1949, Anno., Chapter 17, Article 10, Section 17) adopted the standard defined by this Court in the Yeager case: "It is sufficient if the streets [of a municipal corporation] are in a reasonably safe condition for travel in ordinary modes, with ordinary care, by day or night; and whether so or not is a practical question to be determined in each case by its particular circumstances."

As heretofore indicated, though the portion of the sidewalk on Sixteenth Street, upon which plaintiff is alleged to have slipped and fallen may have been covered with rough ice caused by pedestrians walking thereon at the time of thaws during the extended freezing period and by automobiles being driven over the sidewalk and into the service station for servicing, there is no probative evidence in this record from which the jury could find from a preponderance of the evidence that plaintiff's fall was caused by the accumulation of snow and ice in ridges or in such manner as to constitute an obstruction within the meaning of the statute. In fact, plaintiff herself testified on direct examination that she noticed snow on the north side of the sidewalk on Sixteenth Street, as she walked from Oeff Street, one block east of the service station of Yahn Brothers, across Chapline Street and then along the south side of the service station of Yahn Brothers and the northern sidewalk of Sixteenth Street; and though plaintiff testified that the sidewalk was "icy and rough like, light snow on it", she testified on direct examination that

she did not notice any difference in the sidewalk at the point where she testified she fell from the conditions which existed elsewhere on the sidewalk as she walked along, "until I got down to that one spot", where witness testified it was "icy". On cross-examination the witness testified that from the place where she boarded and alighted from the bus, which was at the corner of Sixteenth and Oeff Streets, in the city of Wheeling, that is one block east of the service station of Yahn Brothers at the southwest corner of Chapline and Sixteenth Streets, she did not notice that the sidewalk was slippery, or that there was any ice on it until she fell. On this basis the cases of *Boyland* v. *City of Parkersburg, supra,* and *Rich* v. *Rosenshine, supra,* should be distinguished, and the rule applied in the case of *Holsberry* v. *City of Elkins,* 86 W. Va. 487, 103 S. E. 271, in which this Court held that a defect in a sidewalk, consisting of a slightly raised portion thereof, upon which there was a thin covering of ice and snow, which had been made slippery by children coasting upon it, did not render the sidewalk out of repair within the meaning of the statute. Nor do we think that this case is governed by the recent case of *Smith* v. *City of Bluefield,* 132 W. Va. 38, 55 S. E. 2d 392, in which this Court by a divided vote sustained the liability of the city of Bluefield, because that case involved a seam or division between two strips or slabs of a sidewalk, in which one strip or slab was almost an inch and a quarter higher than the adjoining strip or slab, which this Court held was such an "obstruction" that the jury could have found, as it did, that the sidewalk was out of repair within the meaning of the statute.

With due regard to the fact that the verdict in the case at bar was in favor of the plaintiff and against city of Wheeling, and that in appraising such verdicts we are governed by the well established principle set forth in pt. 1 syl., *Fielder, Admx.* v. *Service Cab Co.,* 122 W. Va. 522, 11 S. E. 2d 115, and subsequently applied and reiterated by this Court in numerous cases, most of which are collated in the very recent case of *Burcham* v. *City of*

*Mullens,* decided on March 9, 1954, and reported in 139 W. Va. 399, we are persuaded that in the case at bar, there being no defect or obstruction in the physical structure of the sidewalk and no probative evidence from which the jury could find by a preponderance thereof that an obstruction was created on the sidewalk at the point where plaintiff slipped and fell by reason of the accumulation of snow and ice in ridges, such as was found in the facts set forth in the *Boyland* case and alleged in the declaration in the *Rich* case, the judgment in favor of plaintiff and against the city of Wheeling, based upon the verdict of the jury, should be set aside. " 'A judgment entered by a trial court on a verdict based on conflicting oral evidence, after a motion to set aside the verdict and award a new trial has been made and overruled, may, on writ of error, be reversed and a new trial awarded, when, in the judgment of the appellate court, the verdict was plainly against the clear preponderance of the evidence.' *Burgess* v. *Gilchrist,* 123 W. Va. 727, pt. 3 syl.", pt. 5 syl., *Sammons Bros. Construction Company* v. *Elk Creek Coal Company,* 135 W. Va. 656, 65 S. E. 2d 94. See also *French* v. *Sinkford,* 132 W. Va. 66, 54 S. E. 2d 38; *McKown* v. *Citizens State Bank of Ripley,* 91 W. Va. 716, 114 S. E. 271; *Dexter & Carpenter* v. *Co-operative Fuel Co.,* 90 W. Va. 465, 111 S. E. 153; *Fuccy* v. *Coal & Coke Railway Co.,* 75 W. Va. 134, 83 S. E. 301; *Booth* v. *Camden Interstate Railway Co.,* 68 W. Va. 674, 70 S. E. 559; *Priddy* v. *Black Betsy Coal & Mining Co.,* 64 W. Va. 242, 61 S. E. 163; *Chapman* v. *Liverpool Salt & Coal Co.,* 57 W. Va. 395, 50 S. E. 601; *Slaughter's Admr.* v. *Tutt* (Va.), 12 Leigh 147.

A judgment of *nihil capiat* having been entered in favor of the defendants, Yahn Brothers, based upon the verdict of the jury finding these defendants not guilty of the negligence alleged in the declaration, the question presented on the writ of error of plaintiff, Fannie Morris, to that judgment, as heretofore indicated, is quite different from that heretofore considered bearing on the liability of the city of Wheeling. That Yahn Brothers removed the snow

from the surface of the platform of the service station and from the concrete sidewalk on Sixteenth Street, abutting the service station, clearly appears from this record; and that they attempted to, but failed, to remove all of the ice on the concrete sidewalk is equally clear. Their failure in that regard was in direct violation of the ordinance of the city of Wheeling, and in particular Section 4 thereof; but, as held in point 1 of the syllabus of *Moore, Admr.* v. *Skyline Cab, Inc., supra*: "The violation of an ordinance is not negligence as a matter of law, but is *prima facie* actionable negligence when it is the proximate cause of an injury." Thus it is to be noted that even where the violation of an ordinance is the proximate cause of an injury, such violation is only *prima facie* actionable.

A *prima facie* case of actionable negligence is that state of facts which will support a jury finding that the defendant was guilty of negligence which was the proximate cause of plaintiff's injuries, that is, it is a case that has proceeded upon sufficient proof to the stage where it must be submitted to a jury and not decided against the plaintiff as a matter of law. *Smith Sand & Gravel Co.* v. *Corbin*, 75 Wash. 635, 135 P. 472, 474; *Millar* v. *Semler*, 137 Ore. 610, 3 P. 2d 987, 988; *Schallert* v. *Boggs*, (Tex.) 204 S. W. 1061, 1062. In *State* v. *Dodds*, 54 W. Va. 289, 300, 46 S. E. 228, this Court defined a *prima facie* case as "one which is established by sufficient evidence, and can be overthrown only by rebutting evidence adduced on the other side." See also *Woodford* v. *Baltimore & Ohio Railroad Co.*, 70 W. Va. 195, 73 S. E. 290. For an array of numerous decisions of the Courts in other jurisdictions, which contain definitions of *"prima facie* case", which are consonant with the definition of a *"prima facie* case of actionable negligence", heretofore adopted in this opinion, see 33 Words and Phrases, Perm. ed., pp. 543-556.

Though *"prima facie* case" is a broader term than *"prima facie* evidence", it is interesting to note that the Legislature of this State in a number of acts has provided in several instances that certain evidence, affidavits, docu-

ments, certificates, certified copies of public records shall constitute *"prima facie* evidence" in certain specified regards. Code, 61-9-5; Code, 57- 5-10; Code, 44-1-14; Code, 39-1-6; Code, 57-1-7; Code, 16-5-21; Code, 48-8-5; Code, 61-3-23; Code, 56-3-8; Code, 16-5-22; and Code, 46-7-30. In a number of cases, too numerous to mention in view of the fact that the subject under discussion does not bear directly upon the question immediately before us, this Court has applied the *prima facie* evidence rule made applicable by statute.

Reified examples of the application of the rule may be found in *Peabody Insurance Co.* v. *Wilson & Beasley,* 29 W. Va. 528, 2 S. E. 888, and *Smith, Trustee* v. *Tharp, et al.,* 17 W. Va. 221. In the *Peabody Insurance Company* case, in which this Court, having under consideration Section 7, Chapter 51, and Section 8 of Chapter 99 of the then West Virginia Code (1870), now Code, 46-7-30, which provides that a certificate of protest of a negotiable instrument "shall be *prima facie* evidence of what is stated therein or on the foot or on the back thereof in relation to the presentment, dishonor and notice thereof"; and in which no evidence was offered to rebut the statements contained in the notarial certificate of protest, bearing on the question whether the note was duly presented for payment and due notice of dishonor given to the endorser, the Court held in point 4 of the syllabus that "The notarial certificate of protest is in the nature of *documentary* evidence, and the proper construction, as well as the legal effect thereof, as an instrument of evidence of the facts stated therein *are questions of law* to be determined exclusively by the Court." In *Smith, Trustee* v. *Tharp, et al.,* supra, in which this Court considered whether the evidential effect of the state auditor's certificate of the fact and time of the return of any real estate as delinquent under Section 5, Chapter 130 of the West Virginia Code of 1870, now Code, 57-1-7, which provides that the certificate of the state auditor· of the fact and time of the return of any real estate as delinquent or of the sale thereof for taxes "shall * * * be *prima facie* evidence of what is stated

in such certificate", in which case evidence was introduced tending to rebut the statements contained in the auditor's certificate, the Court in point 4 of the syllabus held that as "The auditor's certificate of the fact and time of the return of any real estate as delinquent is only *prima facie* evidence thereof; and it would therefore be error for the court to instruct the jury to infer from any such certificate, that land had been forfeited; the instruction should be, that if *from the evidence* the jury believe the facts stated in such certificate, they should draw such inference." (Italics supplied).

In the majority of cases arising in other jurisdictions it has been held that the violation of a municipal ordinance, designed for the protection of others, is considered as negligence *per se* or negligence as a matter of law, where the violation of the ordinance is the proximate cause of the injury complained of. 65 C. J. S., negligence, Section 19c. (2), subparagraph (b). This rule has been represented as being "the better view". 14 Va. Law. Rev. 591, 595, which embraces a note appraising and approving the decision of the Supreme Court of Appeals of Virginia in the case of *Seaboard Airline Railway Co.* v. *Terrell,* 149 Va. 344, 141 S. E. 231, in which the Virginia Court held that the violation by the railroad company of an ordinance of the City of Richmond, which required a railroad company to lower arm gates at street crossings, constituted negligence as a matter of law, where the plaintiff, though using due care and being without fault, was injured. However, the decisions of the Courts bearing on the effect of the violation of a statute or ordinance on the question of negligence are not in accord. 65 C. J. S., negligence, Section 19c., subparagraph (1), in which it is stated that "* * * the variance is more apparent than real, and may perhaps be explained by the fact that the courts have not always deemed it necessary to draw the distinction between actual negligence and actionable negligence."

Likewise the decisions of this Court, involving the effect of the violation of a statute or ordinance enacted for

the benefit of others, have not been in accord. Thus uniformly in cases involving the child labor law, *Tarr* v. *Keller Lumber & Construction Co.*, 106 W. Va. 99, 144 S. E. 881, 882, 60 A. L. R. 570; *Norman* v. *Virginia-Pocahontas Coal Co.*, 68 W. Va. 405, 69 S. E. 857, 31 L. R. A. (N. S.) 504; *Mangus* v. *Proctor-Eagle Coal Co.*, 87 W. Va. 718, 105 S. E. 909; and *Bobbs* v. *Morgantown Press Co.*, 89 W. Va. 206, 108 S. E. 879, this Court held, to use the language of the *Tarr* case, that "We are committed to the view that a statutory disregard constitutes 'actionable negligence' or '*prima facie* negligence' when it is the natural and proximate cause of the injury." In cases, other than those involving a violation of the child labor law, this Court has expressed other views. For instance, in the case of *Ashley* v. *Kanawha Valley Traction Co.*, 60 W. Va. 306, 55 S. E. 1016, 9 Anno. Cas. 836, this Court held that the violation of an ordinance was negligence *per se* on the basis that a holding contrariwise would, in effect, permit the jury to substitute its judgment as to what constitutes negligence for that of the Legislature. In point 2 of the syllabus of *Ambrose* v. *Young*, 100 W. Va. 452, 130 S. E. 810, this Court held: "The running of an automobile on the public highways of this state at an excessive rate of speed in violation of a statute is of itself negligence, but the wrongdoer is only liable for such injuries as are the proximate result of such illegal speed." In point 1 of the syllabus of *Krodel* v. *Baltimore & Ohio Railroad Co.*, 99 W. Va. 374, 128 S. E. 824, the Court approved an instruction to the effect that the running of a train in violation of a municipal ordinance is not negligence *per se*, but a fact to be considered by the jury, together with other facts and circumstances, bearing on the question of negligence.

After considering its prior holdings, this Court in point 3 of the syllabus of *Oldfield* v. *Woodall, supra,* held that: "Disregard of a requirement of a statute or an ordinance is *prima facie* negligence when it is the natural and proximate cause of an injury." For a carefully prepared note, written by Charles W. Caldwell, Esq., bearing on the decision in the *Oldfield* case, see 39 W. Va. Law Q. 268-270.

Following the decision in the *Oldfield* case, this Court adhered to the holding in that case, bearing on the question of the effect of the violation of an ordinance or statute enacted for the benefit of others, in *Skaff* v. *Dodd*, 130 W. Va. 540, 44 S. E. 2d 621, and *Rich* v. *Rosenshine, supra.* In point 4 of the syllabus of the *Rich* case, this Court held: "The violation of a valid municipal ordinance is *prima facie* actionable negligence when it is the proximate cause of an injury."

As the liability, if any, of the defendants Yahn Brothers is not based upon an absolute nondelegable duty, we shall at this point consider a summary of a part of the evidence for the purpose of determining whether this record contains sufficient evidence to sustain the verdict of the jury in favor of the defendants Yahn Brothers.

Plaintiff's witness, George H. Dougherty, the lockmaster employed by the United States Engineers at Lock No. 12 at Warwood, Ohio County, West Virginia, whose duty it was to take and record the temperatures and precipitation of rain and snow, testified that on December 14, 1951, the temperature (all readings Fahrenheit) was 21° at eight o'clock in the morning, 30° at four o'clock in the afternoon, and 37° at midnight, and the high for that day was 42°. The precipitation between eight o'clock in the morning and four o'clock in the afternoon of December 14, during which time five inches of snow fell, was .43, and between four o'clock in the afternoon and twelve o'clock midnight there was a "trace" of snow. On December 15, 1951, the temperature recorded was 22° at eight o'clock in the morning, 19° at four o'clock in the afternoon, and 6° above zero at midnight, and a "trace" of snow had fallen between the hours of midnight on the 14th and eight o'clock on the morning of the 15th. On December 16, 1951, the temperature at eight o'clock in the morning was 4° below zero, at four o'clock in the afternoon 8° above zero, and at midnight 5° above zero; that on that day there were generally three inches of snow on the ground; and that during the day no new snow fell. On December

17, 1951, the day on which plaintiff was injured, the temperature at eight o'clock in the morning was 3° below zero, at four o'clock in the afternoon 26° above zero, and at midnight 21° above zero.

The defendants, Louis and William Yahn, both testified in detail that they shovelled a part of the snow from the platform of the service station, and in the words of the former witness, "All the sidewalks except where maybe snow would come up and lay on a part of it." On the morning of December 17, 1951, the day upon which plaintiff was injured, Louis Yahn brought from his home and scattered rock salt on the sidewalks, and on that day he and his employees endeavored by an instrument ordinarily used for scraping grease off the floor of the service station to chip the ice off the sidewalks. This effort to chip the ice from the sidewalks, supplemented by at least three applications of rock salt, met with only partial success.

We think that though the defendants, Yahn Brothers, have failed to comply with the strict requirements of the ordinance of the city of Wheeling as to the removal of snow and ice from the sidewalks abutting their property, there is sufficient evidence in this record from which the jury could find that these defendants made a reasonable effort to clear the sidewalks abutting their property, and especially the sidewalk on Sixteenth Street, of both snow and ice, and, therefore, the jury was justified in finding, as it did, that the defendants, Yahn Brothers, were not guilty of actionable negligence, based upon the alleged violation of the ordinance.

The question whether Yahn Brothers were guilty of negligence which was the proximate cause of plaintiff's injuries having been resolved by the verdict of the jury in favor of Yahn Brothers, the verdict, in the absence of a clear preponderance of the evidence to the contrary, will not be set aside by this Court on writ of error. In point 1 of the syllabus of *St. Clair* v. *Jaco*, 95 W. Va. 5, 120 S. E. 188, this Court held: "Where in a trial of an action for personal injuries alleged to have been due to defend-

ants' negligence, upon conflicting oral testimony, the jury returns a verdict for defendants, as a general rule, such verdict should stand." See also *Wilson* v. *McCoy,* 86 W. Va. 103, 103 S. E. 42. See generally 1 M. J., Appeal and Error, Section 267.

For the foregoing reasons we reverse the judgment of the trial court in plaintiff's favor and against the city of Wheeling, set aside the verdict of the jury upon which the judgment against the city of Wheeling was based, and grant a new trial as to the city of Wheeling; and we affirm the judgment of the trial court in favor of the defendants, Yahn Brothers.

> *Judgment reversed;*
> *verdict set aside;*
> *New trial awarded*
> *to the City of Wheeling;*
> *and Judgment affirmed*
> *as to Yahn Brothers.*